## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

MICHAEL VANDERGRIFT

CRIMINAL ACTION
NOS. 13-57-2, 15-157-3

**PAPPERT, J.**                                                        **July 13, 2022**

### MEMORANDUM

Michael Vandergrift was charged in separate indictments with committing a number of very serious crimes.  First, in case 13-57, he was indicted in 2013 for using a handgun to threaten and rob a suspected drug dealer.  Approximately four years later, Vandergrift was charged in a second superseding indictment in case 15-157 for conspiring to distribute Oxycodone and murdering a coconspirator at his supplier's direction to increase their pill supply.

Vandergrift quickly signed a Proffer Agreement with the Government.  During thirteen proffer sessions with numerous federal agents over the course of many hours, he confessed to facts that established the elements of his crimes along with other criminal conduct.  As his lawyer put it later, the extent of Vandergrift's cooperation was rare, resulting in "many, many, many pages" of detailed facts.  Among them were Vandergrift's descriptions of his long history of drug dealing and how he effectively executed a contract killing for his supplier after recruiting a second assailant to assist him.

Vandergrift's Proffer Agreement prevented him from presenting at trial evidence or arguments, himself or through representations by counsel, that contradicted his

statements to the Government.  If he did, the Government could use those statements against him.  Despite spilling his guts to the Feds on thirteen separate occasions, Vandergrift decided to stand trial in the drug conspiracy and murder case, which took place prior to Vandergrift's eventual guilty plea in the robbery case.  Naturally, the volume and detail of the information Vandergrift proffered to the Government severely handcuffed his counsel, who was forced to avoid saying or doing anything that might allow the Government to use his client's statements against him.

The jury convicted Vandergrift on both counts, and the Court later sentenced him in both cases.  He now seeks to challenge his sentences, contending his trial and appellate lawyers both provided constitutionally ineffective assistance of counsel.  The Court grants his petition in part, denies it in part and declines to order an evidentiary hearing.  All but one of Vandergrift's eight claims are foreclosed by his Proffer Agreement and prior decisions by this Court and the Third Circuit.  As the Government concedes, however, Vandergrift is entitled to relief on the remaining claim.

I

Before being charged in either case, Vandergrift agreed to cooperate with the Government.  Over the course of the thirteen proffer sessions between September of 2012 and October of 2016, he admitted to his crimes in extensive detail.  *See* (Proffer Reports, Dkt. 15-157-3, ECF 110 Ex. D).  In his Proffer Agreement, Vandergrift and his counsel agreed the Government could use Vandergrift's admissions against him on the following terms:

> [I]f your client is a witness or party at any trial or other legal proceedings and testifies *or makes representations through counsel* materially different from statements made or information provided during the "off-the-record" proffer, the government may cross-examine your client, introduce rebuttal

evidence and make representations based on statements made or
information provided during the "off-the-record" proffer.

(ECF 110 Ex. B 2 (emphasis added).)  The Government, however, could not use

Vandergrift's proffer statements in its case in chief.  (*Id.* at 1.)

A

1

In case 13-57-2, the Grand Jury returned an indictment on February 6, 2013

charging Vandergrift in count one with conspiracy to commit Hobbs Act robbery in

violation of 18 U.S.C. § 1951(a), in count two with Hobbs Act robbery in violation of 18

U.S.C. § 1951(a), in count three with using and carrying a firearm during and in

relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1), in count four with

possession of a stolen firearm in violation of 18 U.S.C. § 922(j), in counts two, three and

four with aiding and abetting in violation of 18 U.S.C. § 2 and in count five with

possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (ECF

1.)

In case 15-157-3, the May 31, 2017 second superseding indictment charged

Vandergrift with conspiracy to distribute Oxycodone in violation of 21 U.S.C. § 846

(count one) and murder in the course of carrying and using a firearm during and in

relation to a drug trafficking crime in violation of 18 U.S.C. § 924(j)(1) and aiding and

abetting in violation of 18 U.S.C. § 2 (count six).  (ECF 82.)

Vandergrift retained Michael Giampietro as counsel a week after he was indicted

in his drug conspiracy and murder case.  (Dkt. 15-157-3, ECF 90.)[1]  Notwithstanding

---

[1]     Several months later, the Court appointed Giampietro pursuant to the Criminal Justice Act
*nunc pro tunc*, retroactive to the second superseding indictment.  (Nov. 9, 2017 Order, Dkt. 15-157-3,
ECF 142; CJA 20 Form, Dkt. 15-157-3, ECF 150.)  In Vandergrift's robbery case, Giampietro was

3

the thirteen proffer sessions where he confessed to the elements of his crimes in addition to other unrelated criminal conduct, Vandergrift proceeded to trial on November 29, 2017. Given everything Vandergrift admitted to during all those proffers and what the Government could do if Vandergrift or counsel made any representations materially different from the admissions, Giampietro was exceedingly limited in what he could say or do to defend his client at trial. He was forced to go to great lengths to avoid the risk of breaching the Proffer Agreement and potentially allowing the jury to learn of Vandergrift's myriad confessions.[2]

On January 29, 2018, Giampietro moved to withdraw his appointment in both cases to accept a position in the Philadelphia District Attorney's Office. (ECF 216.) The Court granted the motion and appointed Jeremy Gonzalez Ibrahim as Vandergrift's new CJA counsel. (Jan. 29, 2018 Order, ECF 217; CJA Form 20, ECF 218.)

2

Vandergrift's robbery case was reassigned from Judge Jones to this Court on April 5, 2016. (Dkt. 13-57-2, ECF 21.) Approximately two years later, following his conviction in the drug conspiracy and murder case, Vandergrift moved to suppress his proffered statements to the Government. (ECF 57.) The Court held a suppression hearing at which FBI Special Agent Raymond Carr, Vandergrift, Giampietro and former prosecutor Ashley Lunkenheimer testified about the Proffer Agreement and Vandergrift's eager and informed participation in the proffer sessions.

---

also appointed as CJA counsel. (Not. of Appearance, Dkt. 13-57-2, ECF 8; Initial Appearance, Dkt. 13-57-2, ECF 9.)

[2]     Giampietro later explained how extensively the Proffer Agreement tied his hands, including by restricting his cross examination, opening and closing arguments. (Mar. 28, 2018 Supp. Hr'g Tr. 99:4–100:1, Dkt. 13-57-2, ECF 76).

Lunkenheimer said Giampietro told her he and his client were "good to go" with respect to proffering after he separately met with Vandergrift. (Mar. 28, 2018 Supp. Hr'g Tr. 45:8–46:8, ECF 76.) According to Lunkenheimer, once she entered the interview room with Vandergrift, she provided a detailed summary of the Agreement and was "very careful" in reviewing it with him to ensure he understood it. (*Id.* at 47:6–23.) In particular, Lunkenheimer described how his admissions potentially could hamper his defense at trial. (*Id.* at 50:7–16.) Vandergrift assured her he understood, agreed to the Agreement's terms and asked no questions about it. (*Id.* at 54:2–16.)

Giampietro, who has been a lawyer in Pennsylvania for more than forty years and maintained an extensive criminal defense practice, said he privately met with Vandergrift in the proffer room to discuss the Agreement with him line by line. (*Id.* at 89:24–90:10.) He testified that he and Lunkenheimer described the agreement in layman's terms to Vandergrift. (*Id.* at 90:11–91:3.) Specifically, Giampietro told Vandergrift about the proffer process in general and its pros and cons, including how the Government could use his admissions against him. (*Id.* at 84:2–11, 87:6–89:14.) Giampietro attended twelve of Vandergrift's thirteen proffer sessions and was available by phone for the other. (*Id.* at 58:10–14, 96:3–6.)

According to Giampietro, after Vandergrift decided to go to trial, a different prosecutor explained to Vandergrift that the defense's hands would be tied given the amount of information he provided to the Government, including during cross-examination and opening and closing arguments, and that Vandergrift would be in a "very bad position." (*Id.* at 99:25–100:3.) These limitations did not surprise Vandergrift. (100:6–12.) Giampietro elaborated on the prosecutor's statements and

further discussed the Agreement with Vandergrift at a later time. (*Id.* at 99:21–24, 100:5.)

Giampietro also said Vandergrift was a particularly informed defendant who frequently asked good questions and with whom he routinely spoke without issue, including during trial. (*Id.* at 94:17–95:3.) They had a great working relationship. *See* (*id.*). Vandergrift never said he didn't understand any part of the Proffer Agreement. (*Id.* at 91:7–13, 94:14–15.)

The Court denied the motion, concluding Vandergrift knowingly and voluntarily waived his right not to have his statements used against him pursuant to the Proffer Agreement. (*Id.* at 116:15, ECF 76.) It explained Vandergrift was represented by experienced counsel when he entered into the Agreement and at all but one of his proffer sessions, that counsel and the prosecutor reviewed the Agreement with Vandergrift in detail and that its severe restrictions on Vandergrift's arguments and cross-examination at trial were clear and known to all. (*Id.* at 116:19–117:13.) The Court also found Giampietro thoroughly explained these restrictions to Vandergrift and had "absolutely no doubt" Vandergrift fully understood them and that during his proffers Vandergrift fully understood what he was doing. (*Id.* at 119:11–15, 122:2–6, 11–17.) Two weeks after the suppression hearing, Vandergrift pleaded guilty to all counts pursuant to a written guilty plea agreement with the Government. (ECF 74.)

Separately, in Vandergrift's drug conspiracy and murder case—and with Ibrahim now representing him—he moved on March 12, 2018 for a new trial, acquittal and to arrest judgment. (Dkt. 15-157-3, ECF 230.) Vandergrift supplemented the motion the next day. (ECF 234.) The Court denied the motions, again concluding

Vandergrift—through the Proffer Agreement—knowingly and voluntarily waived his rights to challenge his admissions at trial. (June 28, 2018 Mem. 7–8, ECF 269.) It further explained Giampietro understood the Agreement's limitations on his representation of Vandergrift and adjusted his arguments and cross-examination accordingly. *See* (*id.* at 8–9). Finally, the Court stated there was overwhelming evidence of Vandergrift's guilt, even without his proffered admissions. (June 28, 2018 Mem. 9, ECF 269.)

B

On August 30, 2018, the Court sentenced Vandergrift in both cases. It imposed a 240-month sentence on the drug conspiracy count and consecutive life sentence on the murder count in the 2015 case and concurrent terms of 120 months on counts one, two four and five, and a consecutive sixty-month term on count three in the 2013 robbery case. (Judgment 2, Dkt. 15-157-3, ECF 292; Judgment 2, Dkt. 13-57-2, ECF 92.) Vandergrift's 240-month sentence for the drug conspiracy thus runs concurrently with his 120-month terms in his robbery case. His life sentence for murder runs consecutively to all terms in the robbery case and the sixty-month sentence in the robbery case runs consecutively to the sentences for drug conspiracy and murder. (Judgment 2, Dkts. 13-57-2, 15-157-3.) In total, Vandergrift was effectively sentenced to 240 months followed by consecutive terms of sixty months and life. Vandergrift appealed his convictions and sentences, and the Third Circuit affirmed. (Not. of Appeal & USCA Mandate, Dkt. 13-57-2, ECF 94, 101 & Dkt. 15-157-3, ECF 295, 315.)

On April 6, 2021, Vandergrift filed in both cases a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Dkt. 13-57-2, ECF 107 & Dkt.

7

15-157-3, ECF 343.)  Vandergrift asserted, in claims one through eight respectively, that his Sixth Amendment right to the effective assistance of counsel was violated when Giampietro (1) failed to object to allegedly false testimony before the Grand Jury, (2) did not object to alleged prosecutorial misconduct at trial, (3) mishandled plea negotiations with the Government, (4) inadequately prepared for trial, (5) did not cross examine witnesses and challenge the sufficiency of the evidence and (6) insufficiently explained to Vandergrift the consequences of his Proffer Agreement and his thirteen interviews with the Government.  Vandergrift also claims Ibrahim (7) inadequately discussed his appeal with him and did not raise claims he requested and (8) failed to assert a claim based on the United States Supreme Court's 2019 *Davis* decision.  (*Id.* at 4–32.)

II

A

Section 2255(a) of Title 28 of the United States Code permits a prisoner serving a federal sentence to move the sentencing court to vacate, set aside, or correct his sentence when (1) the sentence violated the Constitution or federal law; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  The petitioner bears the burden of showing his § 2255 petition has merit and must clear a significantly higher hurdle than on direct appeal.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995).

The court must hold an evidentiary hearing for a § 2255 petition alleging ineffective assistance of counsel unless the motion, case filings and record conclusively

show the prisoner is not entitled to relief.  28 U.S.C. § 2255(b).  Under the requisite two-step inquiry, the court must consider as true the petitioner's nonfrivolous factual claims and determine based on the existing record whether those claims conclusively fail to demonstrate ineffective assistance.  *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021).

B

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, and counsel can deprive a defendant of this right by failing to render adequate legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, the petitioner must show (1) counsel provided deficient performance and (2) this deficiency prejudiced his defense.  *Id.* at 687.  A court can analyze these prongs in any order and need not address both if petitioner makes an insufficient showing on one.  *Id.* at 697; *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).  *Strickland*'s two-part test is a high bar to surmount.  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

The standard for attorney performance is objective reasonableness under prevailing professional norms when considering all the circumstances.  *Strickland*, 466 U.S. at 687–88, 690; *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017).  Judicial review of counsel's performance is highly deferential.  *Strickland*, 466 U.S. at 689.  The court cannot be distorted by hindsight, must evaluate counsel's conduct from his perspective at the time and strongly presume his conduct is in the wide range of reasonable assistance.  *Id.*; *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020).

9

As for prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one that undermines confidence in the outcome, and the likelihood of a different result must be substantial, not merely conceivable. *Id.*; *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### III

Claims one through seven fail because Vandergrift cannot show deficient performance, prejudice or both for any of them. *See Strickland*, 466 U.S. at 687.[3] But Vandergrift prevails on claim eight, as the Government concedes. No evidentiary hearing is warranted since the parties' filings and the record conclusively show Vandergrift is not entitled to relief on claims one through seven and the Court need not hold a hearing to grant Vandergrift relief on claim eight. *See* § 2255(b); *Arrington*, 13 F.4th at 334.

### A

Vandergrift contends in claim one that Giampietro did not object to the allegedly false testimony of a key witness, fellow Oxycodone dealer Angelo Perone, during grand jury proceedings. (Pet. 4–6, ECF 343.) This claim is meritless.

Giampietro could not have objected to Perone's purportedly false grand jury testimony because Giampietro was not allowed to be there. There is a long-established federal policy of grand jury secrecy. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). Only Government prosecutors, witnesses being questioned,

---

[3] In his headers for claims one, two, four, six and seven, Vandergrift also contends his Fifth Amendment rights were violated. (Pet. 4, 6, 16, 24, 27.) He focuses on the Sixth Amendment, however, and any Fifth Amendment claim would fail in any event.

interpreters and court reporters can be present while the Grand Jury is in session. Fed. R. Crim. P. 6(d)(1).  Defense counsel, like Giampietro, is not on this list.[4]

## B

Vandergrift argues in claim two that Giampietro failed to object to alleged prosecutorial misconduct at trial, namely presenting certain witnesses' testimony and "providing the jury with a false motive" for the murder by playing only portions of select phone calls.  (Pet. 6–11.)  Similarly, in count five Vandergrift asserts Giampietro failed to cross-examine certain witnesses and challenge the sufficiency of the evidence against him.  (*Id.* at 18–24.)

Counsel's strategic decisions—such as whether to object to or cross-examine witnesses or how to rebut a closing argument—are strongly presumed reasonable and, if so, "virtually unchallengeable."  *Dunn v. Reeves*, 141 S.Ct. 2405, 2410 (2021) (per curiam); *Strickland*, 466 U.S. at 689–91.  Reasonableness can turn on the defendant's actions or statements.  *Shelton v. Carroll*, 464 F.3d 423, 439 (3d Cir. 2006).  In all events, counsel must have wide latitude for his tactical decisions, to which courts are highly deferential.  *Strickland*, 466 U.S. at 689; *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  It was within Giampietro's discretion to not cross-examine certain witnesses or object to select testimony at trial.  *Strickland*, 466 U.S. at 689.  Such tactical choices were presumptively reasonable and, because Vandergrift cannot show

---

[4]     In his Reply to the Government's Response to his Petition, Vandergrift attempts to amend his claim to argue Giampietro was deficient for not raising Perone's allegedly false grand jury testimony in a pretrial motion.  (Reply 1, Dkt. 13-57-2, ECF 115 & Dkt. 15-157-3, ECF 360.)  But any error in Vandergrift's grand jury proceedings would have been harmless given he was later convicted.  *United States v. Mechanik*, 475 U.S. 66, 70–73 (1986).

otherwise, effectively insulated from the Court's highly deferential review. *See Dunn*, 141 S.Ct. at 2410; *Strickland*, 466 U.S. at 689–91; *Marshall*, 307 F.3d at 85.

More to the point, Giampietro's strategic decisions were largely dictated by the Proffer Agreement and his client's countless admissions to the Government. *See Shelton*, 464 F.3d at 439. Counsel was severely limited by his responsibility to avoid violating the Agreement and paving the way for the Government to elicit thirteen proffer sessions worth of incriminating statements by his client. (Mar. 28, 2018 Supp. Hr'g Tr. 99:4–100:1.) As the Court previously found, Giampietro understood full well what he could and could not do. (June 28, 2018 Mem. 8.)[5]

In any event, any purported shortcomings in Giampietro's cross examination or challenges to the sufficiency of the evidence did not prejudice him. *See Harrington*, 562 U.S. at 112. As the Court previously explained, the Government presented extensive evidence of Vandergrift's Oxycodone distribution with his coconspirators. (June 28, 2018 Mem. 9.) Likewise, the Third Circuit concluded the Government mustered "truly overwhelming" evidence of Vandergrift's guilt on the murder count. (Apr. 23, 2020 Opinion 2–3, Dkts. 18-2997, 2998, ECF 111 (internal quotation marks omitted).)

C

Vandergrift asserts in claim three that Giampietro "mishandled" plea negotiations with the Government. (Pet. 11–16.) Specifically, Vandergrift contends that in his drug conspiracy and murder case the Government offered him in the spring

---

[5]     Vandergrift also claims that at trial Giampietro did not raise a statute of limitations defense or request a "conspiracy withdraw" instruction, as Vandergrift requested. (Pet. 20.) Such choices, however, are within counsel's reasonable discretion. *See Shelton*, 464 F.3d at 439. Further, the Court rejected these arguments, concluding Vandergrift was a willing and continuous participant in the scheme who did not timely withdraw. (June 28, 2018 Mem. 15–17, ECF 269.)

of 2017 a plea, contingent on his cooperation, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c) with a range between twenty-five and thirty years' imprisonment. (*Id.* at 11.)  Vandergrift rejected the offer because he no longer wanted to cooperate and also because he would be admitting guilt to crimes with which he was not charged. (*Id.*)  Vandergrift asked Giampietro to negotiate a non-cooperation plea, but Giampietro said the cooperation agreement was the only deal the Government offered.  (*Id.*) According to Vandergrift, after he was indicted in May, he asked Giampietro to obtain from the Government an offer covering only the charged offenses, and Giampietro had the same response.  (*Id.*)

A criminal defendant has no constitutional right to be offered a plea or have a federal judge accept it.  *Missouri v. Frye*, 566 U.S. 134, 148 (2012).  The former is completely within the prosecutor's discretion.  *United States v. Santini*, 963 F.2d 585, 596 n.4 (3d Cir. 1992).  Like at trial, defense counsel's plea negotiation strategy is presumptively reasonable.  *See Premo v. Moore*, 562 U.S. 115, 124–25 (2011).

Vandergrift has no claim here.  While counsel must communicate formal offers of favorable plea agreements, that duty does not arise if the Government never makes such an offer.  *See Frye*, 566 U.S. at 148.  That was the case here, as Vandergrift acknowledges.  (Pet. 12.)

Additionally, Vandergrift had no right to the plea offers he asked Giampietro to secure.  *See Santini*, 963 F.2d at 596 n.4.  Nor did Giampietro have any basis to demand them.  *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  And Giampietro never suggested he did; he candidly told Vandergrift what the Government potentially could offer.  *See* (Mar. 28, 2018 Supp. Hr'g Tr. 103:21–104:16).  For example, counsel said he

may have told Vandergrift that, if he pleaded guilty, a twenty-year sentence was a best-case possibility so long as "everything goes perfect" and Vandergrift's cooperation was "spectacular." (*Id.*) But Giampietro never guaranteed Vandergrift such a sentence, which obviously would have depended on Vandergrift cooperating, something Vandergrift acknowledges he wasn't going to do. (*Id.*)

Even if the Government made the offer Vandergrift purportedly sought and he accepted it,[6] there is no guarantee the Court would have done the same. *See Frye*, 566 U.S. at 148. Vandergrift is not entitled to relief merely because he is dissatisfied Giampietro couldn't force the Government to offer him a better deal.

## D

Vandergrift argues in claim four that Giampietro did not sufficiently prepare for trial and that, as a consequence, his cross-examination was inadequate. (Pet. 16–18.) In particular, Vandergrift faults Giampietro for visiting him infrequently and not reviewing discovery material with him before trial, leaving Vandergrift "blind" to the Government's case. (*Id.* at 16.)

As an initial matter, counsel's trial preparation is precisely the sort of discretionary matter entitled to a high degree of deference. *See Strickland*, 466 U.S. at 689.[7] Giampietro need not have met with Vandergrift for a certain length or amount of times. To the contrary, Giampietro only had general duties to keep Vandergrift

---

[6]     It is unlikely Vandergrift would have done so. Giampietro explained Vandergrift was "adamant" when he decided to go to trial despite his prior incriminating statements to the Government. (Mar. 28, 2018 Supp. Hr'g Tr. 97:18–19.)

[7]     In fact, Giampietro's conduct in this case refutes Vandergrift's claim. Giampietro represented Vandergrift for about five years before trial, attended twelve of his thirteen proffer sessions and told the Court shortly before trial that he was ready. (Mar. 28, 2018 Supp. Hr'g Tr. 122:7–8; Evid. Hr'g Tr. 90:1–2, Dkt. 15-157-2, ECF 174.)

informed about his case and discuss it with him.  *See Strickland*, 466 U.S. at 688.  He did so.  In fact, according to Giampietro, Vandergrift was a particularly informed defendant who asked good questions and with whom he had a great working relationship and no problems speaking, including throughout trial.  (Mar. 28, 2018 Supp. Hr'g Tr. 94:17–95:3.)  Moreover, Vandergrift cannot claim he was unaware of the Government's evidence against him; he was "very eager" to speak with the Government about his crimes and did so at length and in great detail over thirteen proffer sessions.  (*Id.* at 117:18–19, 118:14–19.)  Vandergrift couldn't have been "blind" to the Government's case—he likely gave them much of it himself.

Vandergrift's allegation of prejudice—based on allegedly inadequate cross-examination—is also unavailing.  Giampietro did not confine his cross-examination because he was unprepared for trial; he did so because the Proffer Agreement drastically constrained him.  *See* Section III.B.  For example, at a side bar conference held to discuss Giampietro's cross examination of a Government witness, he said navigating the Agreement was "very difficult" and something he had never done before, and that he was "trying [his] best" to not go "anywhere near" certain topics.  (Trial Tr. Day 2 at 259:8–262:8, Dkt. 15-157-3, ECF 202.)  Still, Giampietro fulfilled his "ultimate objective" of vigorous advocacy for Vandergrift despite the waiver's strict limitations.  *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).[8]

E

---

[8]     In his Reply, Vandergrift attempts to expand his prejudice allegation to include unspecified pretrial errors.  (Pet. 3.)  The Court, however, can summarily dismiss such conclusory allegations.  *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

15

Vandergrift contends in count six that Giampietro did not adequately explain the Proffer Agreement's ramifications.  (Pet. 24–27.)  The record shows otherwise. Vandergrift signed his name on the Agreement's signature block labeled "APPROVED," and Giampietro also signed the document.  (ECF 110 Ex. B.)  More importantly, this Court and the Third Circuit already decided this issue.

At the 2018 suppression hearing, the Court concluded Vandergrift knowingly and voluntarily consented to the Agreement's terms at the advice of experienced counsel, that its restrictions were clear and that Giampietro and the prosecutor carefully reviewed the Agreement with Vandergrift.  *See supra* Section I.A.  The Court also found Giampietro explained to Vandergrift how the Agreement would restrict his cross-examination and that, notwithstanding Vandergrift's inquisitiveness, he never asked Giampietro about the waiver's limitations.  (Mar. 28, 2018 Supp. Hr'g Tr. 122:18– 123:5.)  The Third Circuit subsequently agreed with the Court's conclusions.  (Apr. 23, 2020 Opinion 2, Dkts. 18-2997, 2998.)  There is no evidence to support Vandergrift's *post-hoc* allegation that he didn't understand how the Proffer Agreement could limit his defense.

## F

Vandergrift contends in claim seven that Ibrahim did not sufficiently consult him on his appeal and, as a result, raise claims Vandergrift requested.  (Pet. 27–32.)

While the decision to appeal or not is the criminal defendant's to make, appellate counsel can choose which arguments to raise based on his professional judgment and superior ability to evaluate the record and law.  *See Jones v. Barnes*, 463 U.S. 745, 751– 54 (1983); *Douglas v. California*, 372 U.S. 353, 358 (1963).  Although it is possible to

assert an ineffectiveness claim based on appellate counsel's failure to raise a particular issue, it is difficult to prove incompetency because petitioner must show the issues counsel did not raise are clearly stronger than the ones he did. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000).

Ibrahim had the discretion to choose which arguments to raise on appeal and had no obligation to press every claim Vandergrift requested. *See Jones*, 463 U.S. at 751–54; *Douglas*, 372 U.S. at 358. In fact, his decision to focus on certain arguments at the expense of those Vandergrift invokes suggests effective appellate advocacy. *See Smith v. Murray*, 477 U.S. 527, 536 (1986); *see also Jones*, 463 U.S. at 752 (arguing multiple issues can dilute a good case and won't save a bad one). In particular, Ibrahim argued Vandergrift's proffer statements should have been suppressed, that the drug conspiracy charge should have been dismissed and that the Court wrongly admitted certain evidence. (Appellant's Brief, Dkt. 18-2997 & 18-2998.) While none of these arguments succeeded, they are not clearly weaker than those Vandergrift purportedly wanted Ibrahim to assert, which he fails to sufficiently support with record evidence or case law. *See Smith*, 528 U.S. at 287–88.[9]

G

Vandergrift asserts in claim eight that Ibrahim failed to raise a claim under *United States v. Davis*, 139 S.Ct. 2319 (2019). (Pet. 32.)

Section 924(c) imposes a minimum sentence of at least five years for people who, during and in relation to a "crime of violence," use or carry a firearm or, in furtherance

---

[9]     To note just one example, Vandergrift asserts Ibrahim should have raised a statute of limitations argument on the drug conspiracy count, but the Court already rejected this argument. (June 28, 2018 Mem. 15, ECF 269.)

of such a crime, possess a firearm.  Before *Davis*, a crime of violence was a felony offense that (1), under the elements clause, has as an element the use or attempted or threatened use of physical force against another's person or property or (2), under the residual clause, by its nature involves a substantial risk physical force against another's person or property may be used in the course of committing it.  § 924(c)(3).

      *Davis* invalidated the residual clause, meaning an offense can now qualify as a crime of violence only under the elements clause pursuant to the categorical approach. 139 S.Ct. at 2336.  This approach requires courts to focus on the offense's statutory elements, ignore how the defendant actually committed it and determine whether the elements necessarily require the use or attempted or threatened use of physical force. *See United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018); *United States v. Taylor*, 142 S.Ct. 2015, —— (2022).

      The putative predicate offense for Vandergrift's § 924(c) conviction was conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a).  (Indictment 6, Dkt. 13-57-2.)  This offense is not a crime of violence because its elements do not necessarily require the use or attempted or threatened use of physical force.  *See Ramos*, 892 F.3d at 606.  Rather, a conspiracy's essence is an agreement to act unlawfully.  *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003).  Accordingly, as the Government concedes, Vandergrift is entitled to relief in light of *Davis*, and the Court vacates his conviction and consecutive sixty-month sentence for count three in his robbery case.

IV

A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A district court cannot issue one unless the petitioner makes a substantial showing that his constitutional rights were denied.  § 2253(c)(2).  To do so, he must demonstrate reasonable jurists would find the court's evaluation of his constitutional claims wrong or debatable.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling, and Vandergrift has not made a substantial showing that his Sixth Amendment rights were violated.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

19